## Assigned Estate of Fair Hope North Savage Fire Brick Company, Limited. Josiah Boyts' Appeal.

*Wages—Claims—Assignment of claim—Limited partnership association.*
Where a person lends money to a limited partnership association to be used in paying wages claims, and the money is so used, the creditor cannot subsequently obtain a preference for the money loaned by taking assignments of the claims from the laborers.

Argued Oct. 12, 1897. Appeal, No. 4, Oct. Term, 1897, by Josiah Boyts, from order of C. P. Somerset County, May T., 1892, No. 23, confirming auditor's report. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to report of John O. Kimmel, Esq., auditor.

The facts of the case appear by the opinion of the court below, LONGENECKER, P. J., which was as follows:

On March 13, 1890, Henry Thomas Weld entered into a contract with William E. Boyts, J. H. Friedline and W. L. Shuck, which they entitled "Lease of fire clay land and site for a fire clay yard at Fair Hope, in Somerset county, Pennsylvania." Besides leasing to the parties of the second part the fire clay in several tracts of land it provided as follows: "All that piece of land lying between Wills creek and the present lumber office of Weld & Sheridan and the line of the railroad switch owned by Weld & Sheridan and the P. & C. R. R. branch, save and

except that which is in use as a steam saw mill and its appurtenances by said Weld & Sheridan. . . . And it is further agreed that, as the lines of the site to be occupied by the fire brick establishment cannot be defined or agreed on now, when the works are laid out and completed, he, the said party of the first part, will make a warrantee deed against all parties claiming from, to or under him for the land so occupied."

On March 20, 1890, the said parties of the second part formed a "partnership association" under the Act of June 2, 1874, P. L., 271, to be called the Fair Hope North Savage Fire Brick Company, Limited; acknowledged their articles of association before a justice of the peace and had them duly recorded in Somerset county in Record Book Vol. 74, at page 502, according to section 1 of said act.

On August 14, 1890, William E. Boyts borrowed from Henry Thomas Weld $2,500 and gave him his judgment note therefor, which was, on August 19, 1890, entered of record in the common pleas of Somerset county, to No. 299 of September term, 1890. The warrant of attorney contained authority to enter judgment "upon my two-fifths interest in the works of the Fair Hope North Savage Brick Company, now building, and to be built, at Fair Hope, Somerset county, Penn'a." The auditor finds as a fact that the money so borrowed was "used in the erection of said plant."

On April 27, 1891, Weld executed a deed to the "Fair Hope North Savage Fire Brick Company, Limited," for the land indicated in the lease and on which the buildings of the company had in the meantime been erected. It contains the following provision, "Subject to the following conditions, namely: . . . Thirdly and that the said North Savage Fire Brick Company, Limited, its successors and assigns, and the heirs, executors and administrators, . . . shall and do acknowledge that the amount of a certain judgment in favor of Henry Thomas Weld against Wm. E. Boyts, in the common pleas of Somerset county, Penn'a, at No. 299, September term, 1890, for two thousand five hundred dollars . . . . exists against four-tenths of everything conveyed in this deed and the lease aforesaid."

The works of the association were erected on the ground conveyed in this deed, and it continued the business of manufacturing fire brick until February 23, 1892, when, having become

financially embarrassed and its property covered with liens, it made a voluntary assignment for the benefit of its creditors.

The same day a number of the creditors entered into an agreement by which they employed the assignee to take charge of the plant and continue the business, and provided for the gradual payment, out of the earnings, of all the liabilities. A few months of this experiment demonstrated that the business could not be successfully operated, and the project was abandoned. The assignee then procured an order to sell the premises, and disposed of them. Distribution of the proceeds was made by the auditor, and exceptions to his report are now pressed, because he permitted the Weld judgment to participate in the fund, and because he did not allow the labor claims held by Josiah Boyts.

In the first place, it was argued that all the assets must be regarded as personalty, and that no lien had been acquired by the judgments. Sec. 1 of the Supplemental Act of June 25, 1885, P. L. 182, amending sec. 4 of the original act, says, "interest in such partnership associations shall be personal estate," etc., but that provision was intended only for the control of the interests of partners as between themselves, in the management of the affairs of the concern, and for the convenient transfer of such interests while the partnership continues. It was not meant to exempt the real estate of the association from the effect of a lien on the ordinary incumbrance held by an outside person. So that the position of the auditor, supported by him on the authority of Moore v. Moore, 153 Pa. 495, is correct. But the general rule is that "land held by a partnership is considered as realty so far as firm judgments are concerned; and they are liens upon it; but as the separate interests of partners in it are considered as personalty, judgments against them, individually, are not liens upon it or upon those interests:" 3 Trickett's Law of Liens in Pa. 276. And the face of the title must govern as to whether land held by members of a partnership shall be regarded as firm property.

The lease in the present case was not to the firm, but to Boyts and his two associates as tenants in common. The separate two-fifths interest of Boyts might therefore be bound by the Weld judgment. But it is further objected that the land on which the works were afterwards erected was not designated in

the lease with sufficient certainty to sustain a decree for specific performance, and hence no lien could attach to his equity therein. While the exact lines were not ascertained at the time, yet the description above quoted would seem to be sufficient to support an order for its conveyance. The judgment was taken for what was really a partnership debt, but was against Boyts alone, and so bound only his interest in law, as it purported to do in fact. The interest of Boyts was a mere equity arising on articles of agreement for the purchase of the small piece of ground, in connection with the lease, but the rule is so well settled by the cases cited to us, and many others, and so thoroughly understood by the profession to be, that a judgment binds every interest or estate which a defendant has in land, including a mere inceptive title, and that the lien on the equity grasps the legal title into which the equitable becomes perfected by a subsequent conveyance, that it barely needs repetition. But see Waters's App., 35 Pa. 524, Holmes' App., 108 Pa. 27, Zeigler's App., 69 Pa. 473, and cases there cited and considered. If no lien existed prior to the conveyance from Weld to the firm, April 27, 1891, there was, I think, an express lien established in the face of the title, by the deed of that date. In Iliester v. Green, 48 Pa. 101, it is said, " the sum of the authorities is, that though equitable liens are not favored by our law, yet parties may, by clear and express words in a deed of conveyance, create liens upon land, . . . . which will be binding between themselves and their privies, and such liens will be divested by subsequent sheriff's sales," etc. Such a lien is not, of course, to be left to legal implication. The intention to create it must clearly appear, but the language used in the deed from Weld to this partnership association says, "subject to the following conditions, thirdly, that the North Savage Fire Brick Company, Limited, . . . . shall and do acknowledge that the amount of a certain judgment, (reciting it fully,) exists against four-tenths of everthing conveyed in this deed and in the lease aforesaid." Language substantially like this was held sufficient to create a lien by deed in Brownback v. Ozias, 117 Pa. 87; Myers v. Brodbeck, 110 Pa. 199; Christman v. Christ, 4 Penny. 291; Rohn v. Odenwelder, 162 Pa. 346. The intention to fix the lien of the Weld judgment on the property to the extent mentioned is too clear for doubt. It is contended on behalf of

Josiah Boyts that "the three papers referred to, (the lease, judgment note and deed,) constitute a lease of ground, and any interest that Weld had in the same was not disturbed by the assignment and sale;" and also, "that if Weld had a lien, it is in the nature of a defeasance, runs with the land and was not disturbed." The cases of Blood v. Crew Levick Co., 171 Pa. 328, and Ringrose v. Ringrose, 170 Pa. 593, are particularly relied on, in connection with other cases given in the brief, to sustain the first proposition, to the extent that the lien was not disturbed, if there was one. In the first case mentioned the vendor had given a mortgage, which incumbered the land at the time of the conveyance, and in the deed stipulated that it was "under and subject to the payment" thereof. This was held to involve an implied covenant on the part of the vendee to indemnify the vendor against the payment of the mortgage, should he be required to pay it. That principle does not arise here. In the latter case the deed embraced an agreement for the future support, during life, of the parents of the vendee, with the annual payment to each of them of the sum of $25.00 during their natural lives. This was held to create a charge upon the land, which would follow it into the hands of a subsequent purchaser at private or judicial sale.

Judicial sales pass property clear of all liens with three exceptions, viz.: First, those created by last will, etc., as provisions for wives or children; second, when the incumbrance will not admit of valuation; third, where it is plain from the agreement of the parties that it was intended to run with the land: Hiester v. Green, 48 Pa. 101, supra. In Ringrose v. Ringrose, supra, the last mentioned purpose was manifest, and so the incumbrance followed the land. But Weld's judgment was payable in designated instalments, and does not fall within any of the exceptions. The firm took the title subject to the payment of the judgment on its terms, subject to its lien on the four-tenths interest.

Of course there was no defeasance arising out of these transactions. The papers were executed at different times and could not, under the provisions of the act of June 8, 1881, result in a defeasance.

As already stated, the only other claim seriously contested is that of Josiah Boyts for $2,993.44. The personal estate was

first liable for all debts, including labor claims. But Boyts and some others of the creditors entered into an agreement to continue the business. They did so at a loss, and disposed of most of the personal effects during that time. It is, however, further found by the auditor that these claims were not, in fact, purchased by him in the first instance, but that his money was merely loaned on the credit of the firm to aid in settling with its men, and was charged to it on his books at the time. We are not prepared to say that this finding is not sustained by the evidence. Nearly all the testimony on the subject is from the claimant himself. On page 42 he says the claims were assigned to him "for a valuable consideration." On page 53 he says, "in my account I have charged the company with the claims I have put in for labor, all of which are named in the list marked 'A.' My orders for the labor claims were taken after my entries in this book against the N. S. F. B. Co., Limited."

On page 54, "the most of these men were paid by Wm. E. Boyts, and I furnished the money and charged the company with it, and afterwards the labor claims were assigned to me. . . . . The reason I furnished the money to Wm. E. Boyts on the list 'A' was because he was a brother of mine, and I was interested in the success of the company. On page 56, "the first item of $464.78 was made at the time the company and I had a settlement, January 5, 1892. Bills were made by me against the company of these individual claims up to August 20, 1892, then it was settled up to October." He was conducting a store at the company's works, in the same building in which it had its office. If it was originally a loan to the firm, at a time when he still believed it solvent, and not for the purchase of the claims, and if he did not then mean to succeed to the statutory rights of the laborers, as the auditor concludes, he could not afterwards protect himself by the assignments.

It is claimed that these claims are protected to the extent of $100 each under the act of 1854. It seems clear, however, that they are of a class embraced in the act of 1872 and its supplements, and if so, the act of 1854 does not apply. The act of 1854 is supplied by that of 1872 as far as the latter has application: Hall's Estate, 148 Pa. 121.

No effort was made to comply with the act of 1872 and its supplements so as to secure a lien on the realty. The require-

ments of those acts were again clearly set forth, and the proper practice thereunder reiterated in Hall's Estate, supra; and that was the case of an assigned estate, the ruling in which seems to be conclusive as to these claims, so far as the proceeds of the real estate are concerned. Besides, both the Weld judgment and the $2,500 judgment of Livengood became liens on the land more than six months before the failure, and therefore have priority over his claims: 3 Trickett's Law of Liens in Penn'a, page 576, section 436. There is no opposition to the other labor claims.

September 1, 1896, all exceptions inconsistent with the auditor's report and the foregoing opinions are hereby overruled, and the said report is confirmed absolutely.

*Error assigned* was in confirming auditor's report.

, *J. L. Pugh*, for appellant.—It is the object of the wages act to assist laborers in paying their honest debts for necessaries so as to maintain their credit for themselves and their families. And we think these claims should be allowed, as the assignment of the claims shows that the men still have an interest in the claims, and they stand in the same light as if presented by them individually: Atkinson v. Atkinson, 4 Dist. Rep. 291.

*Francis J. Kooser* and *Wm. H. Ruppel*, with them *Ernest O. Kooser* and *Alexander H. Coffroth*, for appellee.

PER CURIAM, October 25, 1897:

We are all of opinion that there is no substantial error in the decree from which this appeal was taken; nor do we think that either of the questions presented by the assignments of error requires discussion. They have been sufficiently considered and correctly disposed of by the court below.

The decree is affirmed on the opinion of its learned president, and the appeal is dismissed at appellant's costs.